Bennet F. SCHAUFFLER, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

PHILADELPHIA WINDOW CLEANERS' AND MAINTENANCE WORKERS' UNION, LOCAL 125, Respondent.

Civ. A. No. 29464.

United States District Court
E. D. Pennsylvania.
June 29, 1961.

Theodore K. High, National Labor Relations Bd., Washington, D. C., Walter N. Moldawer, National Labor Relations Bd., San Francisco, Cal., for petitioner.

Goldstein & Barkan, Philadelphia, Pa., for respondent.

EGAN, District Judge.

The Regional Director, on behalf of the National Labor Relations Board, has petitioned for a preliminary injunction under Section 10(l) of the National Labor Relations Act.[1] Petitioner urges the cessation of certain practices by respondent union Local 125 until such time as the Board makes a final disposition of the unfair labor practice charge filed against the union by the Atlantic Maintenance Company, whose principal place of business is at Pleasantville, New Jersey. The prayer for a preliminary injunction must be denied for lack of an adequate showing of jurisdiction under the Act.

The basic facts will be stated. Atlantic, a New Jersey partnership consisting of Herman Wunsch, Floyd Braman and William Smith, was awarded a $109,000 government contract to perform the janitorial and custodial services at the United States Army Signal Supply Agency building at 228 South 18th Street in Philadelphia.[2] The contract was formerly held by Penn Associates, a firm employing workers represented by respondent union. Penn Associates lost the contract to Atlantic on a lower bid. Pursuant to its contract, Atlantic began servicing the building on February 1, 1961, with approximately 31 non-union employees obtained through the Pennsylvania State Employment Service. The representatives of Local 125 had already begun negotiating with Atlantic for a collective bargaining agreement and for the re-employment of many of the people who had worked at the building for Penn Associates. No agreement was reached, and early in March, 1961, several Local 125 members began distributing circulars and carrying placards[3] at the Signal Corps building. A union organizer also had on-the-job conversations with Atlantic's foreman pertaining to unionizing the new workers. Meetings arranged by the Signal Corps proved fruitless. When the Local's activities continued, Atlantic went to the Board charging the union with an unfair labor practice,[4] and this petition resulted.

1. 29 U.S.C.A. § 160(l).

2. Atlantic's contracts with other military installations in Wyoming, Maryland and Pennsylvania were valued in excess of $80,000, and those in New Jersey were valued at $70,000.

3. The circulars contained the following legend: "To the Consuming Public—To the Employees of Atlantic Maintenance Corp. Atlantic Maintenance Corp. is doing the janitorial work at the Signal Corps. Atlantic Maintenance Corp. does not have a contract with our union, nor are its employees members of our union, or of any union. The welfare of this community depends upon stabilized and decent wages and working conditions. When employees enjoy such wages and conditions, the community prospers, because then the employees can be good citizens, able to live in decent homes, and to raise their families in the American way. Only union members can insist on, and assure these benefits for themselves and for the community, because they have a contract which guarantees these benefits. To the Employees of At-

lantic Maintenance Corp. Join our union and protect yourself and your family. To the Consuming Public—Send letters and appeals to Atlantic Maintenance Corp. and to the Signal Corps to establish good union wages and working conditions, guaranteed by a contract between Atlantic Maintenance Corp. and our Union. NOTE—We are not asking anyone to refuse to pick up, deliver or transport any goods, or not to perform any services either for Atlantic Maintenance Corp. or for the Signal Corps.

"Philadelphia Window Cleaners & Maintenance Workers Union, Local 125, AFL–CIO."

The signs carried read as follows: "To the Consuming Public—To the Employees of Atlantic Maintenance Corporation. Please Take One of Our Circulars and Read It. It Tells You Our Story.

"Philadelphia Window Cleaners & Maintenance Workers Union, Local 125, AFL–CIO."

4. Section 10(a) provides that "The Board is empowered * * * to prevent any

The merits of the controversy revolve about Section 8(b) (7) of the Act, which provides that it is an unfair labor practice for a labor union to picket an employer with the object of forcing or requiring it to recognize or bargain with the union, or requiring the employees to accept the union as their bargaining representative, unless the union is so certified. 29 U.S.C.A. § 158(b) (7). The union's answer denied that it was seeking recognition or organization, and averred that the sole purpose of its activities at the site was informational, *i. e.*, advising the public that Atlantic's employees were not members of a union. It averred further that its peaceful activities came within the proviso of Section 8(b) (7) (C) and therefore it was not obliged to file an election petition under Section 9(c) (1) (A) (i) in order to continue its activities beyond the statutory thirty-day period.[5]

■ Although the parties have made extensive arguments on the merits, both in the briefs and at the hearing, we have no power under Section 10(*l*), or elsewhere in the Act, to resolve these issues or to decide whether an unfair labor practice has been committed. We must be satisfied that the Regional Director had reasonable cause to believe "that the elements of an unfair labor practice are present." See the opinion of Chief Judge Biggs in the recent case of Schauffler, for and on behalf of N. L. R. B. v. Local 1291, International Longshoremen's Ass'n, 3

Cir., 1961, 292 F.2d 182. Douds v. Milk Drivers and Dairy Employees Union Local 584, 2 Cir., 1957, 248 F.2d 534; Schauffler for and on Behalf of the National Labor Relations Board v. Local 30, United Slate, Tile and Composition Roofers etc., D.C.D.Del.1961, 191 F.Supp. 237. His signing of the petition and his taking of the supporting affidavit is sufficient to satisfy the requirements of Section 10(*l*) of the Act. Cf. Schauffler v. Highway Truck Drivers, D.C.E.D.Pa. 1960, 196 F.Supp. 471, opinion by Chief Judge Ganey.

■ Initially, of course, we must satisfy ourselves that jurisdiction exists under the Act. If the petitioner does not demonstrate convincingly that the union's activities "affect commerce" within the meaning of the Act, a Federal Court can take no cognizance of the matter.

In the case before us, there is no competent evidence to prove that the operations of the Signal Corps at the building in question substantially affected commerce. Counsel for petitioner tried to show the functions of the United States Army Signal Supply Agency at the building through the testimony of Mark S. Knox, Chief of the Signal Corps Regional Labor office. His testimony was held to be inadmissible because as a labor relations officer, he had nothing to do with procurement or the work performed at the Signal Corps building, and therefore was unqualified to testify on these aspects of its operations. No other testi-

---

person from engaging in any unfair labor practice (listed in section 8) affecting commerce." 29 U.S.C.A. § 160(a). N. L. R. B. v. Denver Building & Const. Trades Council, 1951, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; Southwest Hotels, Inc., 126 N.L.R.B. 1151 (1960).

5. Section 8(b) (7) (C) reads as follows: "where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c) (1) or the absence of a showing of

a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services."

mony was offered to supply this deficiency.

Atlantic was rendering similar services to other military installations at Cheyenne, Wyoming, Fort Meade, Maryland, Middletown, Pennsylvania, and Lakehurst, New Jersey, but we do not feel that the multi-state activities of the partnership are sufficient to show jurisdiction. True, there were some proofs established through the testimony of the partners that they visited their establishments regularly, at times accompanied by their foreman; that sundry cleaning agents, waxing machines, mops and brooms, etc. were transported by the partners across state lines and that these items were purchased in different places. Nevertheless, the proofs do not set forth the extent to which these activities were carried out, nor do they show the volume or the value of the goods purchased and transported. Value becomes important because the Board, as a matter of policy, has announced that it will not take jurisdiction in non-retail enterprises unless they have an outflow or inflow of goods or services across state lines of at least $50,000. Siemons Mailing Service, 122 N.L.R.B. 81 (1958).

Furthermore, the Board has widened its jurisdiction to include all employers whose operations exert a substantial impact on the national defense. Ready Mixed Concrete, 122 N.L.R.B. 318 (1958). In any event, to establish preliminarily that the Court has jurisdiction, petitioner must prove by competent evidence that the alleged picketing by the union in disrupting Atlantic's services or in affecting the work performed by the Signal Corps has an impact on interstate commerce. N.L.R.A. § 1, 29 U.S.C.A. § 151; Mistletoe Operating Company, 122 N.L.R.B. 1534 (1959); Rheinstein Construction Company, 88 N.L.R.B. 46 (1950).

Since petitioner has not met the burden resting upon it, the petition must be dismissed. We do not reach, and do not pass upon, the question of whether Local 125 has been engaging in unfair labor practices within the meaning of Section 8(b) (7) (C) of the Act.

The above constitutes our findings of fact and conclusions of law. The petition will be and hereby is dismissed without prejudice.